**Salem**

BASIL L. BOSSERMAN

v.

LORRAINE S. BOSSERMAN

No. 0500-88-3

Decided September 5, 1989

2

COUNSEL

Victor V. Ludwig (Robert L. Rhea; Ludwig & Ludwig; Rhea & Miller, on brief), for appellant.

Roger B. Willetts (Edmonds, Willetts, Yount & Hicks, on brief), for appellee.

OPINION

**COLEMAN, J.**—The issue in this case is whether the trial court, when valuing the marital property for purposes of making a monetary award, correctly valued the stock of a closely held corporation whose shares were subject to a stock transfer restriction. Basil Bosserman contends the trial court erred in valuing his stock in Bosserman, Inc. because: (1) the court did not use the price set by the restrictive transfer provision in the corporate by-laws; (2) the court arbitrarily disregarded the evidence of corporate debt in valuing the stock; and (3) the evidence of value, independent of the

method set in the by-laws, was insufficient to support the court's evaluation. We find that the trial court did not err and affirm its valuation of the stock.

Lorraine and Basil Bosserman were married August 7, 1954, and separated on May 6, 1984. During the marriage Basil Bosserman and his three brothers incorporated Bosserman, Inc. Each brother received twenty-five percent of the corporation's stock. The corporation acquired as its sole asset a farm of approximately 126 acres, improved with a two story dwelling and several out buildings. The by-laws of Bosserman, Inc. contain a provision restricting transfer of the stock by the shareholders. Article 5, § 2 of the by-laws requires that a shareholder desiring to sell his stock first offer it for sale to the corporation at its "true book value" before selling it to a third party.

The by-laws further provided that if the corporation and the shareholder did not agree "that the aforesaid book value is a true reflection of the value of such stock," the corporation and the shareholder would each appoint an appraiser and the two appraisers would select a third appraiser who, by majority vote, would determine "true book value" of the stock. The determination made by the appraisers is binding upon the corporation and the shareholder for purposes of the buy out provision. During the pendency of these proceedings, Basil Bosserman sold his stock to Bosserman, Inc., purportedly pursuant to the buy-out provision and based upon a determination of "true book value" of $7,008.

In the divorce proceeding, the parties submitted on depositions which spouse had grounds for divorce. They also stipulated to most relevant facts necessary for the trial court to make the equitable distribution determination: the value of all marital property, except the husband's interest in Bosserman, Inc. and the net fair market value of the farm owned by Bosserman, Inc. The stipulation provided that the net fair market value of the farm owned by the corporation was $147,600 but that the book value of all shares of the Bosserman, Inc. stock was $28,032. The trial court had to decide the effect of the restrictive buy out provisions upon the value of the stock. If the restrictive provisions controlled the stock's value, the trial court also had to determine "true book value." Mr. Bosserman also contends the trial court, irrespective of the valuation formula employed, failed to consider a corporate debt of approximately $16,000 and the fact that he was a minor-

ity stockholder in a close corporation, both of which, he argues, diminish his stock's value. The debts were allegedly for unpaid loans that each Bosserman stockholder had made to the corporation. By decree dated March 18, 1988, the trial court granted Mr. Bosserman a divorce based on his wife's desertion and granted Mrs. Bosserman a monetary award equivalent to forty-nine percent of the marital property valued at $93,400, of which $36,900 was the value of the stock. Mr. Bosserman appeals the trial court's valuation of his stock in Bosserman, Inc. as the basis for the monetary award.

Whether the trial court erred in valuing the Bosserman, Inc. stock depends upon the effect which must be given the restrictive transfer provision in the by-laws and the sufficiency of the evidence to value the stock. At the evidentiary hearing both parties had certified accountants testify to the value of the stock. Since the restrictive by-laws provided for a first option buy out based on "true book value" that concept became significant for the trial court to determine the stock's value. Both accountants agreed that the term "true book value" is not an accepted accounting principle. Both agreed that the term "book value" of stock is determined solely by reference to the value of stock as reflected on the books of the corporation. Mrs. Bosserman's accountant suggested that since the by-laws did not utilize an acceptable accounting principle the proper method of valuation would be fair market value. Mr. Bosserman's accountant testified that if the by-laws meant "book value" of the stock, its book value was $7,008.

Interpreting Article 5 § 2 of the corporation's by-laws, the trial court ruled "that it is my opinion that the original stockholders that formed Bosserman, Inc., intended that each stockholder would be able to sell his stock back to Bosserman, Inc. at its fair market value." The trial court based that ruling upon the valuation procedure to select three appraisers who would determine that "true book value" which "is a true reflection of the value of such stock." Thus, the trial court construed "true book value" as used in the by-laws to mean fair market value. Since Mr. Bosserman did not offer any evidence of fair market value of the stock, the trial court accepted the stipulated value ($147,600) of the corporation's sole asset, the farm, and $36,900 as the value of his one-fourth interest.

On the issue of discounting corporate debt to arrive at fair market value, Mr. Bosserman's accountant, who kept the corporate books, testified that the corporation did owe its stockholders approximately $16,000, even though he found no promissory notes or other written evidence of indebtedness, and even though the corporation had paid no interest to stockholders or made a demand from them for payment. The accountant acknowledged that the IRS would not treat the debt as a loan but as a capital contribution by the stockholders. The trial court found no corporate debt. The trial court also ruled that Basil Bosserman failed to produce credible evidence establishing how the value of his stock should be discounted because of his minority interest. Thus, the trial court did not reduce the value on account of corporate debt or minority stock interest and further found that Basil Bosserman's recent sale of his stock to the corporation for $7,008 was irrelevant for purposes of Code § 20-107.3. The trial court valued the stock at $36,900 for purposes of determining the monetary award.

Code § 20-107.3 requires a trial court to value the parties' separate and marital property before making a monetary award. The trial court's valuation cannot be based on "mere guesswork." *Taylor v. Taylor*, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988). The burden is on the parties to provide the trial court sufficient evidence from which it can value their property. *Id.*; *see also Bowers v. Bowers*, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987). Once the trial court has resolved conflicting evidence as to value and determined value, the decision whether to make a monetary award and the amount of the award is governed by the rights and equities of the parties and the factors designated in Code § 20-107.3(E). *Artis v. Artis*, 4 Va. App. 132, 136, 354 S.E.2d 812, 814 (1987). The award will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Frye v. Spotte*, 4 Va. App. 530, 537, 359 S.E.2d 315, 319-20 (1987); *see also Aster v. Gross*, 7 Va. App. 1, 9, 371 S.E.2d 833, 838 (1988); *Brown v. Brown*, 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987).

The purpose of Code § 20-107.3 is to fairly divide the value of the marital assets acquired by the parties during marriage with due regard for both their monetary and nonmonetary contributions to the acquisition and maintenance of the property and to the marriage. *Robinette v. Robinette*, 4 Va. App. 123, 130, 354

S.E.2d 808, 811 (1987). Trial courts valuing marital property for the purpose of making a monetary award must determine from the evidence that value which represents the property's intrinsic worth to the parties upon dissolution of the marriage.

We first consider whether the trial court erred by refusing to be bound by the method of valuation set by the by-laws and by Basil Bosserman's sale of the stock according to those terms. Although similar issues have been addressed by courts in many equitable distribution jurisdictions, *see generally Effect of Restrictive Agreement on Valuation*, 6 Equitable Distribution Journal 49 (1989), Virginia courts have not previously considered the issue. In a majority of jurisdictions, the price set by a buy-out provision does not control the determination of value when the other spouse did not consent or was not otherwise bound by its terms. This is so even though the agreement was executed after the marriage. The reason for rejecting the value set by buy-out provisions is that they do not necessarily represent the intrinsic worth of the stock to the parties. Some courts, however, consider buy-out provisions a factor to be considered. *Id.* at 50-51; *see, e.g., Suther v. Suther*, 28 Wash. App. 838, 627 P.2d 110 (1981). Other jurisdictions hold that the terms of the restriction presumptively control value, *see, e.g., Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975), while a small minority regard the value specified in the agreement as controlling. *See, e.g., Hertz v. Hertz*, 99 N.M. 320, 657 P.2d 1169 (1983).

■ A decision to reject the valuation method set by a restrictive transfer agreement or by-law does not mean that they are not binding and enforceable between the business partners. Many legitimate business purposes, such as protecting the business from outside intervention or change in ownership, providing economic continuity, and estate and tax planning, are served by such provisions. Skoloff, *The Value of a Law Practice in a Divorce*, A.B.A.J. 38 (March, 1988). The price established for buy-out purposes, however, is often artificial and does not always reflect true value. The very purpose of such provisions or agreements often is to discourage sales by restricting the price which could be realized to less than the actual value to the owner. Further, depending upon the circumstances between the parties and the nature of the restrictions on transfer, whether they merely limit or prohibit marketability to third persons, the true value of the stock may be pri-

marily controlled by factors other than marketability. For instance, restrictions on marketability may have no effect upon other benefits which the shareholder derives from his stock ownership, such as dividends, director's fees, participation in health, life or accident insurance programs, retirement plans and numerous other benefits which increase the value of the stock to its owner irrespective of its value in the marketplace. Accordingly, the sale price set by restrictive provisions on transfer is not conclusive as to the value of the stock.

■ On the other hand, the limitation created by the restrictive agreement necessarily affects the actual marketability of the stock, and thus its value. Therefore, a bona fide provision or agreement must be considered when a trial court determines the value of stock for purposes of equitable distribution. *Suther*, 28 Wash. App. at _____, 627 P.2d at 114. When stock is subject to a restrictive transfer agreement or by-law the price fixed by such provisions will not control its value, but the restriction on transfer is a factor which affects the value of the stock for purposes of equitable distribution. *See Amodio v. Amodio*, 70 N.Y.2d 5, 7, 509 N.E.2d 936, 937, 516 N.Y.S. 2d 923, 924 (1987); *Suther*, 28 Wash. App. at _____, 627 P.2d at 113-14; *Bowen v. Bowen*, 96 N.J. 36, _____, 473 A.2d 73, 79 (1984); *Beavers v. Beavers*, 675 S.W.2d 296, 299 (Tex. App. 1984); *In re Marriage of Belt*, 65 Or. App. 606, 610, 672 P.2d 1205, 1207 (1983); *Rogers v. Rogers*, 296 N.W.2d 849, 852 (Minn. 1980); *In re Marriage of Moffatt*, 279 N.W.2d 15, 18 (Iowa 1979). We affirm, therefore, the trial court's ruling that it was not bound by the value established in the by-laws for transferring the stock as between the shareholders and the corporation.

The extent to which such restrictive provisions influence value depends upon numerous factors, including the nature, size and purpose of the corporation; the type and nature of its assets; the terms of the restrictions or transfer provisions; the nature and existence of escape clauses; optional provisions for valuation; and any circumstance which could affect the corporation, the stockholders or their relationship. Depending upon the circumstance of each case, different methods of valuation may reflect more accurately the actual value of the stock to the shareholder. In some instances the rate of return on investment might control; in others the fair market value of the corporate assets might be predomi-

nant; and in others the value to the shareholder of benefits derived from the corporation could be significant. In the present case the trial court had to determine from the Bossermans' evidence the method of valuation that would most accurately reflect the actual value of this stock in this closely held corporation and under these circumstances.

While there are many methods available for valuing stock in a closely held corporation,[1] valuation based upon the corporation's net assets has gained wide acceptance in cases where the corporation is a real estate holding company like Bosserman, Inc. *See In re Marriage of Moffatt*, 279 N.W.2d at 19; *Bowen*, 96 N.J. at ____, 473 A.2d at 77; *Argyle v. Argyle*, 688 P.2d 468 (Utah 1984). The Internal Revenue Service has given its approval to this method of valuing a closely held real estate holding company:

"The value of the stock of a closely held investment or real estate holding company, whether or not family owned, is closely related to the value of the assets underlying the stock. For companies of this type the appraiser should determine

---

[1] There is no uniform rule for valuing stock in closely held corporations. The valuation method must be tailored to meet the particular needs of each case.

'Each case presents a unique factual question, the solution to which is not within the ambit of any exact science. The reasonableness of any valuation depends upon the judgment and experience of the appraiser and the completeness of the information upon which his conclusions are based' . . . .

Nevertheless, most experts and courts have used the IRS's Revenue Ruling 59-60 as the guide in valuing the close corporation. The goal is to arrive at a fair market value for a stock for which there is no market. To do this, the IRS recommends that 'all available financial data, as well as all relevant factors affecting the fair market value, should be considered . . . .'

Among the factors listed in the Ruling as 'fundamental and requir[ing] careful analysis' are the history of the firm, the nature of the company, the outlook for the industry, the book value of the stock, the size of the block to be valued, the earning and dividend-paying capacities of the company, and the existence of goodwill or other intangible assets. Generally, greater weight will be given to earnings factors for those companies that sell products or services, and to asset values for investment or holding companies . . . .

The Ruling warns against an inflexible approach to valuing. Methods such as taking an average of several factors are disapproved. However, restrictive arrangements, such as buy-sell agreements, may be used, along as with other factors, to arrive at the value of the stock.

*Bowen*, 96 N.J. at ____, 473 A.2d at 77 (citations omitted); *see also Amodio*, 70 N.Y.2d at 7, 509 N.E.2d at 936-37, 516 N.Y.S.2d at 924. *See generally* L. Golden, *Equitable Distribution of Property* § 7.08-7.09 (1983).

the fair market value of the assets of the company . . . . For these reasons, the adjusted net worth should be accorded greater weight in valuing the stock of a closely held investment or real estate holding company, whether or not family owned, than any other common yardsticks of appraisal, such as earnings or dividend paying capacity."

*In re Marriage of Moffatt*, 279 N.W.2d at 19 (quoting Rev. Rul. 59-60 § 5(b) 1959-1 C.B. 243).

The only evidence presented to the trial court of the stock's value was that shown on the corporate books and the worth of the corporation's only asset, the farm valued at $147,600. The trial court properly rejected the evidence of value offered by Basil Bosserman of "book value" and his evidence that he sold it for that amount. Thus, even though the evidence presented by the parties precluded the trial court from considering other methods of valuation, the use of the value of the net assets was proper. The trial court's determination of the value of the stock based on the value of the corporation's net assets was reasonable and supported by credible evidence. The trial court did not err in basing its valuation on this particular method.

Further, we find the evidence concerning the effect of Basil Bosserman's minority stock interest was insufficient for the trial court to discount the value of his interest. *See Popp v. Popp*, 146 Wis. 2d 778, 432 N.W.2d 600 (1988) (no discount for the minority interest in the closely held corporation could be granted without expert testimony on the issue). By not producing any evidence about whether or how the stock should be discounted because it represented a minority holding, Mr. Bosserman cannot argue on appeal that the trial court erred in not discounting his stock below his proportionate value of the net corporate assets. *See Bowers*, 4 Va. App. at 617-18, 359 S.E.2d at 550-51.

Finally, Mr. Bosserman argues that the trial court erred by failing to consider his evidence of corporate debt in valuing the stock. The husband's accountant, who also kept Bosserman, Inc.'s corporate books, testified that the books showed that the corporation owed its shareholders approximately $16,000. The trial court determined that the $16,000 was a contribution to capitalize the corporation and was not a debt. Whether a corporate debt existed or the amount thereof is of no consequence in this case since presum-

ably a proportionate share of the alleged debt was owed Basil Bosserman and would increase the marital property to the same degree it reduced the value of the stock. Admittedly, different rights and equities might exist in the assets which would influence whether to grant a monetary award and the amount thereof. Nevertheless, the evidence was sufficient to support the finding of the trial court that the alleged debt was, in fact, capitalization of the corporation. *See Hodges v. Hodges*, 2 Va. App. 508, 516-17, 347 S.E.2d 134, 139 (1986).

Accordingly, the trial court's valuation of the stock in Bosserman, Inc. for purposes of Code § 20-107.3 is affirmed.

*Affirmed.*

Benton, J., and Duff, J., concurred.