## CIRCUIT COURT OF FAIRFAX COUNTY

Bo Yun Kim

v.

Eric Jongwoo Choe

August 11, 2004

Case No. (Chancery) 182158

BY JUDGE JONATHAN C. THACHER

This matter came on for a review for an equitable distribution, a spousal, and a child support hearing on March 9-10, 2004. After evidence presented and listening to the witnesses' testimony, and considering counsels' arguments, the Court reaches the findings and conclusions stated below.

### Background

On January 16, 2003, Bo Yun Kim, the Complainant, filed her Bill of Complaint for Divorce. At the time of the filing of the Bill of Complaint, Eric Jongwoo Choe, the Respondent, was employed as a medical doctor; and the Complainant was an employee at the Respondent's urology medical practice. However, the parties separated on April 26, 2002, and the Complainant ended her employment relationship with the Respondent's medical practice prior to this litigation.

On April 11, 2003, a *Pendente Lite* Order was entered which awarded the Complainant *pendente lite* spousal support in the amount of $6,750.00 per month and *pendente lite* child support in the amount of $2,702.00 per month.[1]

---

[1] The figure representing child support reflects an upward deviation from the presumptive amount of $1,963.00. This upward deviation was in consideration of the Court's ruling regarding payment of the mortgage on the parties' marital home.

To support these figures, it was determined that the Respondent's monthly income was determined to be $24,107.00 and the Complainant's monthly income was $0.00.

On March 9-10, 2004, this Court heard oral argument on what would be the appropriate equitable distribution of the parties' marital property. The parties have stipulated that all marital property (including the medical practice) should be divided "50-50" between the parties. An essential issue to be resolved is the value of the medical practice.

## Analysis

### A. *Equitable Distribution*

Virginia Code § 20-107.3 requires the trial court to determine the value of all marital property of the parties and, upon an equitable distribution of the property, the court may award a lump sum payment. Va. Code § 20-107.3. When determining the value of a business, it is important to consider all of the factors that effect the value of that business as to ensure a valuation that represents the intrinsic worth to the parties whose marriage is being dissolved. *Bosserman v. Bosserman*, 9 Va. App. 1, 6, 384 S.E.2d 104, 107 (1989).

> Intrinsic value is a very subjective concept that looks to the worth of the property to the parties. The methods of valuation must take into consideration the parties themselves and the different situations in which they exist. The item may have no established market value, and neither party may contemplate selling the item; indeed, sale may be restricted or forbidden. Commonly, one party will continue to enjoy the benefits of the property while the other must relinquish all future benefits. Still, its intrinsic value must be translated into a monetary amount. The parties must rely on accepted methods of valuation, but the particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples.

*Howell v. Howell*, 31 Va. App. 332, 339, 523 S.E.2d 514, 517-18 (2000).

> Discounting future earnings is not an inherently flawed method of valuation because it is based on projected future earnings. The value of goodwill can have two components. Professional goodwill (also designated as individual, personal, or separate goodwill) is

attributable to the individual and is categorized as separate property in a divorce action. Practice goodwill (also designated as business or commercial goodwill) is attributable to the business entity, the professional firm, and may be marital property.

*Id.*, at 344, 523 S.E.2d, at 520 (2000).

The Complainant offered the testimony of Dr. Thomas Borzilleri as a valuation expert to determine the value of the Respondent's medical practice. Dr. Borzilleri's uses a discount cash flow approach for his valuation of the practice. This approach attempts to forecast the future income of the practice by reviewing the historical data averages, such as the annual revenue and annual profits, over a period of time. This gave Dr. Borzilleri the ability to estimate the revenue and profit trends for future years. Dr. Borzilleri would then, after considering the expected rate of return and the risk premiums and consulting the Schilt Guidelines, select a discount rate for capitalizing the expected discount streams of the practice. Dr. Borzilleri testified that he determined that the Respondent could sell this practice to another for $400,000.00, which represented the value of this medical practice.

The Respondent countered with the testimony of Mr. Robert Raymond as a valuation expert to determine the value of the subject medical practice. Mr. Raymond utilized a combination of a qualitative analysis and a quantitative analysis. The quantitative analysis construed the financial statements and figures as the basis for the potential value of the medical practice; however, Mr. Raymond also considered qualitative factors that may have an impact on the intrinsic value of the practice.

Quantitatively, Mr. Raymond analyzed the income tax returns for the years of 1998 through 2002. Mr. Raymond, however, further interviewed the Respondent and the practice's office manager; interviewed an independent CPA serving the practice; analyzed 2003 billings, adjustments, and receipts; the December 31, 2003, bank statement for the practice operating account; and he reviewed a detailed depreciation schedule as of December 31, 2002.

Qualitatively, Mr. Raymond considered factors unique to this medical practice, such as the size and nature of the practice; employment structure; client referrals and the origin of those referrals; the scope of the social economic make up of the Respondent's client base; the age, experience, and reputation of the Respondent. Mr. Raymond considered and compared the national economic conditions versus the local economic conditions. The competitive nature of the urology market in Fairfax County was also taken into consideration. Significantly, Mr. Raymond reviewed several other resources, including controlling Virginia case law on valuations of businesses, in guiding his valuation determination.

Mr. Raymond noted that "the five year compound growth rate in revenues has been 2.8%, a rate barely in excess of inflation." See Respondent's Expert Report at p. 5. Further, there exists a lack of capacity to grow significantly due to the influence of competition and stagnant or failing reimbursement rates which have led to a decline in profits in each year for the past five years. Mr. Raymond contends that "the absence of excess earnings is significant, for it is a tenet of valuation theory that intangible value (i.e., goodwill) cannot exist absent a history or expectation of excess earnings." *Id.* Mr. Raymond's analysis consisted of the income approach, the asset approach, the market approach. Mr. Raymond concludes that the intrinsic value of the medical practice was no more than the net asset value of $157,000.00.

Both experts in this case did not quite meet the expectations of this Court in their analysis of the intrinsic value of the medical practice. Mr. Raymond's shortcomings arise in his failure to credit the medical practice with any institutional (or practice) goodwill. He identified institutional goodwill as encompassing the practice's investment in capital, technology, assembled workforce, location, facilities, size, client base, name recognition, financial strength, institutional referral sources, industry trends, management infrastructure, and the like. Mr. Raymond did not deem the practice to exhibit any significant components of institutional goodwill. Rather, Mr. Raymond contends that all of the goodwill attributes are inseparable from the Respondent and are personal to him. The Court is not convinced that Mr. Raymond gave adequate credit to factors he identified as characteristics of industrial goodwill. For instance, 85% of the medical practice referrals come from other physicians who are influenced by the quality and personal care provided by the Respondent's medical practice. Rather than dismissing the industrial goodwill factors without an explanation, the Court would have preferred an application of these factors to the medical practice. The Court is reluctant to accept Mr. Raymond's position that the medical practice is devoid of any industrial goodwill. However, Mr. Raymond is a qualified expert and has experience in determining the value of businesses such as the Respondent's in this case and the Court cannot dismiss his opinion. Mr. Raymond did a thorough analysis of the medical practice at issue in this case, and his expert opinion was helpful to the Court.

Dr. Borzilleri's valuation opinion had some shortcomings as well. Dr. Borzilleri testified that he did not consider the "intrinsic value" to be an appropriate standard in this case. However, intrinsic value is the standard preferred in Virginia law. See generally *Howell v. Howell,* 31 Va. App. 332, 344, 523 S.E.2d 514, 520 (2000); *Bosserman v. Bosserman,* 9 Va. App. 1, 384 S.E.2d 104 (1989). Further, Dr. Borzilleri testified that he failed to

consider any possible distinction between personal goodwill and industrial goodwill. However, Virginia courts recognize a distinction between personal goodwill and industrial goodwill. *Howell*, 31 Va. App. at 344, 523 S.E.2d at 520. The distinction is significant because the former is deemed separate property while the later is deemed marital property. *Id.* Additionally, at trial, it was determined that Dr. Borzilleri used outdated figures when determining what a urologist would pay for the Respondent's medical practice. As a result, the Court determines that Dr. Borzilleri's opinion is flawed as a matter of fact and law, as he significantly over-inflated the value of the medical practice. For these reasons, the Court must reject Dr. Borzilleri's opinion as to the value of the medical practice.

"The burden is on the parties to provide the trial court sufficient evidence from which it can value their property." *Taylor v. Taylor*, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988); see also *Bowers v. Bowers*, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987). The trial court has discretion to resolve conflicting expert testimony to determine an asset's value. See *id.* at 341, 523 S.E.2d at 519; see also *Rowe v. Rowe*, 24 Va. App. 123, 140, 480 S.E.2d 760, 768 (1997); *McDavid v. McDavid*, 19 Va. App. 406, 413, 451 S.E.2d 713, 718 (1994). In this case, the Court accepts Mr. Raymond's expert opinion to the extent that the net asset value is a reflection of the intrinsic value of the. medical practice. Unfortunately, neither party presented any credible evidence that supports a finding that any industrial goodwill is attached to this medical practice, and the Court will not arbitrarily credit the practice with any. The Court, however, feels that Mr. Raymond subtracted the Respondent's Simplified Employee Plan (hereinafter "SEP") of $30,000.00 improperly. The SEP was truly revenue to the practice, which is deemed marital property. By placing these funds in the SEP for the Respondent's retirement, he was essentially converting practice revenue into his separate property. Further, the Court finds that the Respondent's decision to employ his mother at $60,000.00 per year was an improper attempt to shift income given the limited services she provided. As such, this $90,000.00 of assets, whether it be in the form of cash or other, was either not counted or improperly subtracted from Mr. Raymond's Valuation Utilizing Asset Accumulation Method. See Respondent's Expert Report at Exhibit F. Therefore, this amount should be added to the net asset value of the medical practice. The Court finds the intrinsic value of the medical practice to be $247,000.00.

The parties are entitled to a fifty/fifty distribution of the intrinsic value of the medical practice. The parties further stipulated to the value of other marital property which shall also be divided in a fifty/fifty distribution.

## B. *Spousal and Child Support*

At the hearing in this matter, the parties stipulated that Complainant was capable of becoming employed and obtaining an income of $35,000.00 per year ($2,917.00 per month). As such, this amount shall be imputed to her. Respondent's monthly income is determined to be $24,107.00 per month. After considering the factors of Va. Code § 20-107.1(E), the Court determines that spousal support should be set at $7,500.00 per month. All of the factors of Va. Code § 20-107.1 played a role in this determination; however, the Court found significance in its finding that $7,500.00 was the actual cost to maintain the household.

Based upon each parties' monthly income, the Court, using the child support guidelines of Va. Code § 20-108.2, determines that Respondent owes a child support obligation to Complainant in the amount of $1,848.00 per month to benefit the parties' three minor children.