STEVENSON, J.
 

 This is an appeal in a dissolution of marriage case. Former husband objects to the trial court’s valuation of his interest in a medical partnership and the calculation of alimony. We affirm in part and reverse in part. We affirm the court’s valuation of former husband’s partnership interest using the net asset value approach and reverse a portion of the alimony award and remand for reconsideration.
 

 Eduardo and Clara Garcia married in 1988. The parties separated in 2007 and have two children, ages 13 and 11 at the time of the separation. Former husband is a medical doctor who specializes in the treatment of cancer and blood disorders. Since 1996, he has been a part owner in Hematology Oncology Associates of the Palm Beaches, P.A. He now has a 25% interest in the practice. At the time of trial, former husband had three partners, all with equal shares in the practice. All of the partners signed a Shareholders’ Agreement (“the Agreement”) and an employment contract. Former wife has a high school diploma and has not worked outside the home since before the birth of the couple’s first child.
 

 The court ruled that an equal distribution of the marital estate was equitable. After valuing the other assets, the court required former husband to pay former wife the sum of $194,979 to equalize the distribution. As a result, each party received $2,119,826 in assets. Among the assets former husband received was the value of his interest in the medical practice, which the court, accepting the testimony and report of former wife’s expert witness, valued at $890,449. The court also awarded former vafe $11,000 per month in alimony.
 

 Former husband moved for reconsideration or rehearing. The court granted former husband’s motion in part and entered its amended final judgment. Former husband thereafter appealed.
 

 Property Division
 

 Former husband first argues that the court inequitably divided the parties’ assets by failing to consider a restrictive transfer and designated stock value agreement in valuing his interest in the partnership. Former husband acquired the stock pursuant to the Agreement, which prohibits any shareholder from selling, assigning, transferring or pledging their shares. If a triggering event occurs such that a shareholder dies, is disabled or terminated from employment, the Agreement provides that the shareholder will receive a payment of $15,000 for three months — a total payment of $45,000 for his interest in the practice.
 

 Due to the lack of cases in Florida regarding the effect of a restrictive shareholders’ agreement on the valuation of a medical partnership, we find that the court was correct in adopting the reasoning of two out-of-state cases,
 
 Bosserman v. Bosserman,
 
 9 Va.App. 1, 384 S.E.2d 104 (1989), and
 
 Bowen v. Bowen,
 
 96 N.J. 36, 473 A.2d 73 (1984).
 
 Bosserman
 
 held that “the sale price set by restrictive provisions on transfer” of closely held stock was “not conclusive as to the value.” 384 S.E.2d at 108;
 
 see also Bowen,
 
 473 A.2d at 73, 78. The courts recognized, however, that restrictive transfer covenants affected value through impaired marketability and “must be considered when a trial court determines the value of stock for purposes of
 
 *689
 
 equitable distribution.”
 
 Bosserman,
 
 384 S.E.2d at 108;
 
 see also Bowen,
 
 473 A.2d at 79. “When stock is subject to a restrictive transfer agreement ... the price fixed by such provisions will not control its value, but the restriction on transfer is a factor which affects the value of the stock for purposes of equitable distribution.”
 
 Bosserman,
 
 384 S.E.2d at 108;
 
 see also Bowen,
 
 473 A.2d at 79.
 

 In
 
 Bossemian,
 
 the court noted:
 

 The extent to which such restrictive provisions influence value depends upon numerous factors, including the nature, size and purpose of the corporation; the type and nature of its assets; the terms of the restrictions or transfer provisions; the nature and existence of escape clauses; optional provisions for valuation; and any circumstance which could affect the corporation, the stockholders or their relationship. Depending upon the circumstance of each case, different methods of valuation may reflect more accurately the actual value of the stock to the shareholder. In some instances the rate of return on investment might control; in others the fair market value of the corporate assets might be predominant; and in others the value to the shareholder of benefits derived from the corporation could be significant.
 

 384 S.E.2d at 108-09. The court in
 
 Bos-semian
 
 went on to affirm the trial court’s finding that, considering the impact of the restrictive transfer agreement on the closely held stock, a net asset valuation was the most accurate method of ascertaining the true value of the stock to the shareholder.
 
 Id.
 

 In the instant case, both parties submitted expert testimony as to the value of former husband’s interest in his practice. Former wife’s expert applied the net asset approach and valued former husband’s interest in the medical practice at $890,449. Her expert examined the Agreement, decided that it created an artificial and unrealistic value, and determined that the net asset value method would be the most reasonable way to value former husband’s stock. Former wife’s expert also concluded, after considering all the circumstances, that it was not necessary to further discount the net asset value due to the restrictive agreement. Former husband’s expert did alternative valuations for the practice. Former husband’s expert first placed the value of the practice at $45,000, which is the amount former husband would receive if one of the triggering events in the Agreement occurred. Former husband’s expert’s second valuation applied the net asset approach and valued former husband’s interest in the practice at $562,665. The difference between the experts’ valuations is attributable to their handling of the practice’s accounts receivable.
 

 A trial court’s property valuation must be supported by competent, substantial evidence.
 
 Mullen v. Mullen,
 
 825 So.2d 1078, 1079 (Fla. 4th DCA 2002);
 
 Cummings v. Cummings,
 
 719 So.2d 948, 950 (Fla. 4th DCA 1998). Here, the trial court found that the net asset value methodology for valuing closely held businesses, as proposed in
 
 Bossemian,
 
 was the most reasonable method of determining the value of former husband’s stock. While former husband argues the trial court erred in relying on former wife’s expert’s valuation because it failed to ascribe any monetary significance, or “discount” on the net asset value due to the restrictive agreement, neither did former husband’s expert provide such a calculation. As such, the trial court was left with values it was given and determined that the value provided by former wife’s expert was the most reasonable. We find neither legal error nor abuse of discretion in the trial court’s acceptance of
 
 *690
 
 former wife’s expert’s testimony as to the value of former husband’s medical partnership. Accordingly, the trial court’s valuation of former husband’s interest in the medical practice for purposes of equitably distributing the marital estate is affirmed.
 

 Alimony
 

 Former husband argues that the court erred in its calculation of the amount of permanent alimony because former wife’s monthly net income post-divorce exceeds her claimed living expenses.
 

 The purpose of permanent periodic alimony is “to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties.”
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197, 1201 (Fla.1980). “Absent special circumstances ..., an alimony award should not exceed a spouse’s need.”
 
 Rosecan v. Springer,
 
 845 So.2d 927, 929 (Fla. 4th DCA 2003). The standard of living established by the parties' during the marriage can be an important component of a permanent, periodic alimony award in a long-term marriage.
 
 See MeCloskey v. McCloskey,
 
 359 So.2d 494, 497 (Fla. 4th DCA 1978);
 
 see also Zeballos v. Zeballos,
 
 951 So.2d 972, 974 (Fla. 4th DCA 2007);
 
 Donoff v. Donoff,
 
 940 So.2d 1221, 1225 (Fla. 4th DCA 2006).
 

 While we are mindful of the narrow scope of our review for abuse of discretion, we are compelled to reverse the award of permanent periodic alimony to former wife because the numbers do not seem to compute. The trial court awarded former wife a gross taxable amount of $11,000 in permanent periodic alimony, which results in a net monthly award of $8,035. Former wife’s pre-alimony disposable income is $5,221 and adding that amount to former wife’s net monthly alimony award results in former wife’s monthly disposable income of $13,256. Former wife’s post-divorce disposable income will exceed her claimed living expenses of $12,098 by approximately $1,200 per month. We cannot determine whether the additional alimony amount is based, in whole or in part, on standard of living adjustments, such as for the former wife’s future “vacation and travel expenses” since the-trial court specifically found that frequent and expensive worldwide vacations “were part of the parties’ lifestyle”; if this is so, the court should make such clear in its final order on remand. In any event, we cannot reconcile with certainty the trial court’s alimony award with the findings of need as stated in the order on appeal and, therefore, reverse and remand to the trial court to reconsider the award of alimony in accordance with former wife’s needs.
 
 [1]
 

 We reverse and remand for reconsideration of the award of permanent, periodic alimony and affirm the judgment in all other respects.
 

 Affirmed in part, reversed in part, and remanded.
 

 TAYLOR and MAY, JJ., concur.
 

 [1]
 

 . The reconsideration of the alimony award will be limited to the extent of the disputed amount as discussed in this opinion.