UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Senior Judge Clements
Argued at Leesburg, Virginia

RAKESH KUMAR DHAWAN

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 0887-22-4               JUDGE JEAN HARRISON CLEMENTS
                                            AUGUST 1, 2023

BONITA DHAWAN

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Samuel A. Leven (The Baldwin Law Firm, LLC, on briefs), for
appellant.

Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.

Rakesh Kumar Dhawan (husband) appeals a final order of divorce, which the circuit court

entered on May 17, 2022. Husband argues that the circuit court erred when "it placed prohibitions

and restrictions on the parties' business." Husband further contends that the circuit court erred in

distributing assets of the business and ordering husband "to personally pay debts belonging to the

parties' business" "despite said business being a separate corporate entity." Husband also

challenges the circuit court's distribution of the business "when there was no evidence in the record

as to the valuation of the business." In addition, husband argues that the circuit court erred in

determining his income for spousal support and child support purposes and ordering that the support

be retroactive. Husband asserts that the circuit court erred in ordering husband to pay Bonita

Dhawan (wife) $6,400 for her "post-separation paychecks." Finally, husband contends that the

circuit court abused its discretion by ordering him to pay wife's attorney fees "when the award was

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

based at least in part on other erroneous rulings and was not justified by the equities of the case." For the reasons stated below, we affirm the circuit court's decision in part, reverse in part, and remand this case to the circuit court for further proceedings consistent with this opinion.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Shah v. Shah*, 70 Va. App. 588, 591 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). Here, wife is the prevailing party, so we consider all the evidence in the light most favorable to her.

The parties married in 1995 and had two children. During the marriage, the parties started Falco eMotors, Inc., an American corporation, (Falco) and Falco eMotors Private Limited, an Indian company (Falco India).[1] Falco "markets and sells electric bike conversion systems"; whereas Falco India "manufactures and sells commercial fans" from India. Husband owned 79% of the Falco shares, and wife owned 21%. Both parties also served as directors of Falco; husband was the president, and wife was the vice president.

On August 1, 2019, the parties separated, and approximately three months later, husband advised wife that she was "terminated" from Falco. He blocked her access to Falco and its emails. Husband also withdrew funds from Falco for personal expenses. Wife subsequently filed a complaint for divorce and an emergency motion to enjoin husband from "disposing [of] and/or encumbering any assets" and "taking any adverse action against [her] with regard to her position" with Falco. After wife filed her pleadings, husband removed wife as a director of Falco, claiming that she stole money from the company. Husband opposed wife's emergency

_____

[1] The parties were equal shareholders in Falco India. The circuit court did not "make any equitable distribution of this asset," which is not challenged on appeal. Therefore, all references to Falco in this opinion are to the American corporation.

- 2 -

motion and denied her claims that he was "wasting" corporate funds. On January 31, 2020, the parties appeared before the circuit court for argument on wife's emergency motion. Husband agreed "to provide a full detailed accounting for any funds dispersed from the company accounts" and represented that the accounting would be provided in discovery. In addition, husband agreed to not "take[] any steps . . . to economically isolate [wife] by blocking her access and/or use of the parties' financial accounts or assets." Husband and wife also agreed to a mutual injunction against the "waste of marital assets."

Then the parties each presented their arguments regarding husband's management of Falco's assets and liabilities and wife's involvement in the business. In her motion, wife had requested an order enjoining husband from "selling, gifting, transferring, pledging and/or otherwise disposing and/or encumbering any assets . . . or otherwise diminishing the marital estate or increasing marital debt . . . , except as necessary in the ordinary course of business and only as mutually and expressly agreed to by the [p]arties." Acknowledging that the circuit court could order husband "not to waste" a business asset, husband argued that there was "no authority" to allow wife to "control" how he used business funds because as president and majority shareholder, only he managed the business. Over husband's objections, the circuit court granted wife's request. The circuit court did not address wife's request to reinstate her as vice president of Falco.

After the hearing, both parties sought clarification of the circuit court's ruling, and husband moved for reconsideration, which the circuit court denied.[2] Furthermore, Falco, by special appearance of counsel, moved to intervene and challenge the circuit court's jurisdiction to "enter an order regarding the assets and interests of Falco." The circuit court denied Falco's

_____

[2] Husband also filed an amended motion for reconsideration, which the circuit court denied.

motion because it had not yet entered an order after the hearing on wife's emergency motion and "therefore there [was] no order controlling corporate assets that are not marital property." Several months after the hearing, the circuit court entered an order memorializing its ruling on wife's emergency motion. As part of its order, the circuit court "reserved for further adjudication" wife's request to enjoin husband from "taking any adverse action against [her] with regard to her position with the [c]ompany and to reinstate her as [v]ice [p]resident thereof."[3]

In addition to the orders regarding Falco, the circuit court entered a pendente lite support order, directing husband to pay $4,317 per month for spousal support and $1,508 per month for child support, as of September 1, 2020.[4] In addition, the circuit court granted wife's request for "retroactive" spousal and child support for the period between December 2, 2019 and August 31, 2020, and ordered husband to pay a lump sum amount totaling $52,425.

After the entry of the pendente lite order, wife filed a petition for a rule to show cause, arguing that husband was not complying with the injunction order.[5] Wife alleged that husband had transferred and/or disposed of assets without "the mutual and express agreement" of the parties and "[n]ot within the ordinary course of business." Claiming that husband had transferred funds from Falco to pay his retroactive support obligations, wife sought an order requiring husband to "restore" the money he took and enjoin him from using marital funds to pay his support obligations. In response, husband reiterated that wife "improperly allege[d] that the assets of the corporation in the ordinary course of business are subject to the [c]ircuit [c]ourt's

---

[3] Husband had retained new counsel, who endorsed the order as "Seen and Agreed."

[4] The circuit court determined husband's monthly income was $15,417 and wife's monthly income was $0. The parties had agreed that wife would have primary physical custody of the children.

[5] Upon entry of an agreed order, wife filed an "Amended Verified Petition for Rule to Show Cause."

jurisdiction in the divorce matter." Acknowledging that the "shares of the company may be considered marital assets," husband argued that "categorization [did] not reach to the assets of the corporation, or to any actions taken by the corporation via its fiduciaries." After hearing evidence and argument, the circuit court found that the evidence was sufficient to find husband in contempt of the injunction order, but it declined to hold him in contempt. The circuit court ordered husband to "consult" with wife "regarding all the withdrawals, expenditures and pledges" of Falco as of July 31, 2020, and to "replenish any funds he withdrew and/or transferred and/or pledged" from Falco which wife believed were "not in the ordinary course of business and/or which were not necessary business expenses from July 31, 2020 forward."

Less than four months later, husband again requested relief from the circuit court's orders, specifically that he needed wife's approval "for every company expenditure." He alleged that because wife would "not approve regular and necessary business expenses, the businesses [were] nearing collapse." Wife responded that husband had not complied with the circuit court's order to provide her with "complete access" to Falco's books, which "gravely inhibited" wife's ability to approve expenditures. At a review hearing, the circuit court found husband in contempt and ordered him to "replenish the sum of $86,834.91," which represented personal expenses, to Falco's business account and "make available" to wife all of the companies' "electronic and other databases, records and bank accounts." The circuit court found that wife approved business expenses "on many occasions," but also was "frozen out," especially when she questioned "figures appearing in the Falco account and then ending up in the personal accounts." It concluded that wife "should not have to fight and fight and fight and fight for information." It also ordered husband to "provide written confirmation to all employees," advising them that they were to "immediately" cooperate with wife by answering her questions and providing her with information she requested.

In preparation for trial, both parties submitted written pleadings regarding the equitable distribution factors and their proposals for custody, visitation, and support.[6] Husband and wife agreed that Falco was a marital asset. Husband asserted that it had "little intrinsic value," and wife simply stated that the value had not yet been determined.

Thereafter, on February 4, 2022, the circuit court entered an order incorporating the parties' "Partial Marital Agreement," in which they agreed to list the marital residence for sale, pay for "all agreed-upon repairs" to the house "with funds contained in the Falco e-Motors, Inc. Capital One Bank Account," and to repay the bank account at the settlement before any other distributions. The parties also agreed to use the proceeds from the sale of the marital residence to pay certain debts, with any remaining funds to be held in escrow.

On February 28, March 1, 2, and 10, 2022, the parties presented evidence and argument regarding Falco, its valuation, their marital assets and debts, and their incomes. Both parties had retained vocational experts. Wife's expert opined that husband was capable of earning at least $250,000 per year. Husband's expert opined that wife was capable of earning between $57,000 and $75,000 as a sales account manager, a sales representative, or an executive assistant. Furthermore, wife presented evidence that she had incurred $307,861 in attorney fees and $42,244.74 in costs as of March 23, 2022.

After the circuit court heard all the evidence and argument, but before it rendered an opinion, the former marital residence sold. The parties agreed to reimburse the Falco Capital One bank account for house repair expenses and to disburse some of the funds to their counsel, with the remaining funds held in an escrow account pending equitable distribution.

---

[6] On June 14, 2021, the circuit court entered a consent custody and visitation order, which awarded joint legal custody and primary physical custody to wife with parenting time to husband.

On March 24, 2022, the circuit court issued its ruling. As relevant to this appeal, the circuit court reviewed the Code § 20-107.3(E) factors for equitable distribution. The circuit court considered the parties' roles in Falco and found that wife had been "very active" in the company before their separation. During the marriage, the parties had used the Falco accounts "as their personal accounts" to meet their expenses. The parties also had a home equity line of credit of $300,000, from which they borrowed funds for Falco. In 2018, husband had "approached" wife about "step[ping] down" from Falco, which she had refused to do. Undeterred, husband removed wife from Falco, and then, when she tried to claim unemployment benefits, she was denied because "of an unfounded allegation of theft." The circuit court found that wife's removal had a "disastrous effect on the success" of the company. Husband had withdrawn money from Falco for "nonbusiness-related expenses," such as his payment of pendente lite support arrearages, living expenses, and legal fees, and used his control of the company to limit wife's access "to any financial wherewithal." After the parties separated, husband also had "removed" Falco's reimbursement of wife's credit cards but did not do so with his credit cards.

The circuit court classified Falco as marital property. It found that Falco was "a corporation in name only as the husband freely used funds from the business for his personal expenses and even when business expenses were refunded . . . , the refunded money sometimes went into his personal account."

The circuit court divided Falco's Capital One checking account equally between the parties.[7] It also equalized the Falco shares, "so that they each become [50] percent shareholders." Alternatively, the circuit court offered to value Falco at "approximately

---

[7] Despite finding that the accounts were marital, the circuit court did not divide Falco's PayPal account and Wells Fargo checking account.

$200,000," based on an exhibit that was prepared for "purposes of the 401(k)," and allow husband to pay wife a monetary award for her share. Wife objected and argued that she "had asked not to distribute Falco USA because the valuation was . . . not represented" by that exhibit. Wife asked the circuit court to equalize the Falco shares, which it did.

Next, the circuit court considered debts that "were taken out" by husband or Falco after the separation, including a PayPal loan, a small business administration loan, a bank loan, and a payroll protection program loan. The circuit court found that these debts were not marital, but husband's separate debts, and ordered him to be solely responsible for them.

Finding that wife had a need for spousal support and husband had the ability to pay, the circuit court considered the Code § 20-107.1(E) factors to determine the amount of the spousal support award. The circuit court found that Falco had "covered most if not all of the parties' living expenses"; however, after they separated, husband "did not successfully maintain that business" and wife had either "no real access" or "limited access" to the company. Thus, the circuit court expressed concern as to whether Falco would be able to "generate a sufficient income to provide for the living expenses that are needed to support a reasonable lifestyle."

Considering the vocational expert opinions, the circuit court found that wife did not "meet the stated requirements" for many of the jobs that husband's expert suggested for her. Wife had been "out of the open job market for [20] years," but had been "active" in Falco. Accordingly, the circuit court found that wife would need some time to "transition to a career outside the home," so it imputed income to her of $30,000 per year, beginning one year after the entry of the final decree. On the other hand, the circuit court found wife's expert to be "well-qualified" and accepted his opinion that husband could earn $250,000 per year. In 2021, husband began working for Daikin Applied Americas, Inc., where he earned "at least $140,000 per year." He testified that he was "transitioning out of Falco Motors but then later on during

testimony said that he would not." The circuit court found that husband had retained funds from Falco, of which he availed himself for personal expenses, equaling "at least $134,600 per year." Therefore, the circuit court found that husband's "actual income" was "at least $274,000 per year."

The circuit court awarded wife a lump sum spousal support award of $180,000 "for the first three years," to be paid from the funds held in escrow, and then in year four, she would receive $5,000 per month for an undefined duration. The circuit court then prepared two calculations of child support guidelines, one with no imputation of income for wife and one with imputing income to wife. The circuit court ordered husband to pay $1,954 per month in child support "for the first year from the date of entry" of the final order and $1,861 per month thereafter. The circuit court also ordered that the support awards were retroactive to the filing of the complaint for divorce, "after applying a credit" for all pendente lite support payments.

When considering whether to award attorney fees, the circuit court found that husband had filed several "frivolous" motions and had been found in contempt more than once. The circuit court noted that the issues were "complex," especially when determining business and personal expenses and the court's "authority over a corporation that clearly, although no formal corporate veil piercing was done, informally these parties just used this business however they chose to use it." After "balancing all of the equities and the totality of the circumstances and the financial positions of the parties," the circuit court awarded wife $68,000 in attorney fees, plus $21,000 in costs.

On May 17, 2022, the circuit court entered the final order of divorce, memorializing its rulings.[8] The final order provided that each party had 21 days from its entry to file objections. Husband filed his objections on May 31, 2022.[9] Husband appeals.

## ANALYSIS

### I. Equitable Distribution

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). The Court will not overturn an equitable distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). "Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" *Sobol*, 74 Va. App. at 272 (quoting *Howell v. Howell*, 31 Va. App. 332, 350 (2000)).

### A. Pendente Lite Order

Shortly after wife filed her complaint for divorce, she sought an injunction to preserve the parties' assets, including Falco. The circuit court entered a pendente lite order enjoining husband from "disposing and/or encumbering any assets . . . , except as necessary in the ordinary course of business and only as mutually and expressly agreed to by the [p]arties." Husband argues that

---

[8] On the same day, the circuit court also entered a qualified domestic relations order transferring 4,355 shares of Falco common stock to wife from "the Falco eMotors Inc. 401K Plan F/B/O Rakesh Dhawan."

[9] Wife argues that husband's objections were not timely and did not preserve his arguments for appeal because they were filed after the entry of the final order of divorce. We disagree, as the circuit court expressly granted the parties leave to file their objections within 21 days of the entry of the final order, which husband did.

the circuit court exceeded its authority when it placed "prohibitions and restrictions" on the parties' business by ordering that wife had to approve all corporate expenditures. Husband emphasizes that the corporate veil had not been pierced and Falco was a separate corporate entity that was not a party to the divorce proceedings.[10]

"[W]hile a divorce suit is pending, Code § 20-103(A)(vii) authorizes the circuit court to enter orders 'to preserve the estate of either spouse, so that it be forthcoming to meet any decree which may be made in the suit[.]'" *Hoffman P'ship, LLP by Hoffman v. Circuit Court of Spotsylvania Cnty.*, 72 Va. App. 206, 216 (2020) (second alteration in original). A pendente lite order preserves the status quo of the parties until a final decree of divorce. *Everett v. Tawes*, 298 Va. 25, 34 (2019). It has "no presumptive or determinative effect on the underlying cause of divorce." *Id.*; *see also* Code § 20-103(J) ("[a]n order entered pursuant to this section shall have no presumptive effect and shall not be determinative when adjudicating the underlying cause").

Here, the circuit court entered the pendente lite order to preserve the marital assets, including Falco. At a subsequent hearing, the circuit court found that the parties owned "100 percent" of their companies and the companies were closely held corporations, "controlled" solely by husband and wife. Throughout the pendency of the litigation, the parties disagreed over wife's involvement and authority in running the parties' businesses; indeed, the circuit court found husband in contempt when he failed to comply with the pendente lite order by spending corporate funds "without mutual and express agreement." At the final hearing, the circuit court found that husband "continued throughout this litigation to take actions which diminished the marital estate," which it considered when issuing its final ruling.

---

[10] During oral arguments, wife conceded that Falco was a separate legal entity and the corporate veil had not been pierced.

On appeal, husband asks this Court to reverse the circuit court's pendente lite and contempt orders and remand the matter to the circuit court "for further proceedings as necessary to undo the damage done to the husband and to Falco USA and Falco India by these improper orders." Husband does not explain what damage he or the businesses sustained as a consequence of the circuit court's orders, other than that he had to reimburse Falco for funds that he spent without wife's consent.

"It is this Court's duty 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Hollowell v. Va. Marine Res. Comm'n*, 56 Va. App. 70, 77 (2010) (quoting *Harrison v. Ocean View Fishing Pier, LLC*, 50 Va. App. 556, 570 (2007)). An issue becomes moot "when an event occurs while a case is pending . . . that . . . 'renders it impossible' for this Court to grant appellant the relief requested." *Id.* at 77-78 (quoting *Jackson v. Marshall*, 19 Va. App. 628, 635 (1995)).

At this stage of the proceeding, it is "impossible" for this Court to grant the relief that husband requests. *Id.* The parties made decisions regarding Falco and its daily activities that cannot be undone now. The circuit court considered husband's actions throughout the pendency of the suit when it issued its final ruling. Therefore, it is not possible for this Court to "undo" the alleged damage to husband, Falco USA, and Falco India. Accordingly, we will not consider this argument.

### B. Valuation and Distribution of Falco

Husband argues that the circuit court erred in "distributing" Falco when neither party presented evidence of its value. Husband further contends that the circuit court erroneously divided

Falco's Capital One checking account and apportioned several of Falco's debts to husband. We agree.

"The equitable distribution process is governed by Code § 20-107.3, which requires a trial court to classify, value, and distribute property." *Sobol*, 74 Va. App. at 273; *see also Hamad v. Hamad*, 61 Va. App. 593, 602 (2013) ("Equitable distribution involves three distinct decisions: classification, valuation, and distribution."). "Code § 20-107.3(A) direct[s] the trial court to 'determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue.'" *Sobol*, 74 Va. App. at 274. "'Code § 20-107.3 requires a trial court to value the parties' separate and marital property before making a monetary award. The trial court's valuation cannot be based on "mere guesswork."'" *Stratton v. Stratton*, 16 Va. App. 878, 883 (1993) (quoting *Bosserman v. Bosserman*, 9 Va. App. 1, 5 (1989)). The "burden is on the parties to provide the trial court sufficient evidence from which it can value their property." *Id.* (quoting *Bosserman*, 9 Va. App. at 5). "Trial courts valuing marital property for the purpose of making a monetary award must determine from the evidence that value which represents the property's intrinsic worth to the parties upon dissolution of the marriage." *Bosserman*, 9 Va. App. at 6; *see also Patel v. Patel*, 61 Va. App. 714, 722-23 (2013) (same). "[E]xpert testimony is the most expedient, and, in fact, the preferable method for [valuing marital property]." *Koons v. Crane*, 72 Va. App. 720, 740 (2021) (alterations in original) (quoting *Stratton*, 16 Va. App. at 883).

Neither husband nor wife presented any evidence, including expert testimony, establishing Falco's value. Husband emphasized the lack of valuation evidence during his closing argument. Wife asserted that she could not "get these businesses valued because the books are so cooked."

During the trial, wife questioned husband about a document produced for Falco that estimated the value of the business for purposes of their 401(k), which held their Falco shares.

Husband testified that the document was not valuing the business, and the document itself specifically states that its purpose was only to estimate the value for IRS Form 5500 and was not "a formal business valuation." Wife conceded that the exhibit could not "be used as a statement of value for the business." She further admitted that the circuit court could not divide Falco "because there's not a business valuation for a lot of reasons," including husband's "chicanery." Instead, wife asked the circuit court to divide the 401(k) that held the parties' shares. The circuit court granted wife's request, ordered equalization of the shares held in the 401(k), and entered a qualified domestic relations order.

Although husband argues on appeal that the circuit court could not distribute Falco without first determining its value, he does not challenge the circuit court's finding that the shares of Falco were held in the 401(k) or the transfer of those shares. Moreover, husband did not appeal the qualified domestic relations order. Considering husband's concession, we will not review the circuit court's division of the shares.

In addition to equalizing the parties' shares in Falco, the circuit court divided equally Falco's Capital One checking account and ordered husband to be "solely responsible" for "debts he leveraged" against Falco, including a PayPal loan, payroll protection program loan, Clearbank loan, SBA-EIDL loan, loan from CP Dhawan, loan from KL Dhawan, and payments made from Falco's account to Rachel Virk, Westlake Legal, Sareen & Associates, and Robbins Research. The Capital One account was an asset of Falco, and the debts were Falco's debts, not debts titled in husband's name.

"Property which is owned by third parties, including a corporation owned entirely by the parties, is generally not marital property subject to equitable distribution." *Cabral v. Cabral*, 62 Va. App. 600, 611 n.8 (2013) (quoting 1 Brett Turner, *Equitable Distribution of Property* § 5:51, at 531 (3d ed. 2005)). Accordingly, Falco's Capital One account and debts were not subject to

distribution under Code § 20-107.3, and the circuit court erred in distributing them as part of its equitable distribution award. Therefore, we reverse the circuit court's distribution of the Capital One account and the order directing husband to pay the PayPal loan, payroll protection program loan, Clearbank loan, SBA-EIDL loan, loan from CP Dhawan, loan from KL Dhawan, as well as the debts owed to Rachel Virk, Westlake Legal, Sareen & Associates, and Robbins Research.

### C. Wife's post-separation paychecks

Husband argues that the circuit court erred when it ordered him to pay wife $6,400 for her "post-separation paychecks."[11] He contends that the circuit court "lacked authority" to order him to pay wife because there was no evidence that the funds were in his "possession or control." Husband further asserts that there is no evidence in the record that "this property even exists."

"[D]ecisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." *Wright v. Wright*, 61 Va. App. 432, 450 (2013) (quoting *McDavid v. McDavid*, 19 Va. App. 406, 407-08 (1994)); see also *Dixon*, 71 Va. App. at 717-18 (same). Wife did not raise the issue of her post-separation paychecks in her pretrial equitable distribution submission, nor did she address

---

[11] Wife argues that "to the extent the funds held in escrow have been disbursed to [her], [h]usband's appeal is moot." She contends that the "[v]oluntary payment of a judgment deprives the payor of the right of appeal." *Sheehy v. Williams*, 299 Va. 274, 279 (2020). The Supreme Court further explained that a party makes a voluntary payment when "'the law would not compel him to make' the payment." *Id.* (quoting Kent Sinclair, *Sinclair on Virginia Remedies* § 9-2, at 9-5 (5th ed. 2016)). Any payment made to wife, however, was not voluntary; therefore, husband's argument is not moot.

the issue in her closing argument.[12]  Wife testified about her income from Falco and offered into evidence her W-2's showing how much she had earned from 2016 through 2019.  She also testified that she had not received any compensation "from 2019 onwards" without further explanation.  This record contains no evidence to support the circuit court's ruling that husband had to "reimburse" wife for $6,400 in post-separation paychecks, so we reverse the circuit court's ruling.

## II.  Support

Husband also appeals the circuit court's spousal support and child support awards. Virginia's statutory scheme mandates that a determination of spousal support requires consideration, either directly or indirectly, of the equitable distribution provisions governing the marital property.  Code § 20-107.1(E)(8).  The circuit court also is required to consider the impact of the equitable distribution award on child support.  *See* Code § 20-108.1(B)(11), (12), (15) (permitting a court to deviate from the presumptive calculation under the child support guidelines based on the "[e]arning capacity, obligations, and financial resources" of the parents, "[p]rovisions made with regard to the marital property under § 20-107.3, where said property earns income or has an income-earning potential," and "the equities for the parents and children").  In addition, the child support guidelines include spousal support in the calculation. Code § 20-108.2(C).  "Because we here reverse in part the trial court's award of equitable distribution, our case law is clear that, on remand, the trial court will also have to thoroughly

---

[12] The record in this case spans more than 16,000 pages, and despite wife's reference in her brief to her income, neither party pointed this Court to where the issue of wife's post-separation paychecks was discussed.  "[I]t is not the function of this Court to 'search the record for error in order to interpret the [parties'] contention and correct deficiencies in a brief.'" *Alwan v. Alwan*, 70 Va. App. 599, 612 (2019) (first alteration in original) (quoting *West v. West*, 59 Va. App. 225, 235 (2011)).  "Nor is it this Court's 'function to comb through the record . . . to ferret-out for ourselves the validity of [the parties'] claims.'"  *Id.* (first alteration in original) (quoting *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012)).

reassess" its spousal support and child support awards. *Stark v. Dinarany*, 73 Va. App. 733, 754-55 (2021).

### III. Attorney Fees

A circuit court's decision to award attorney fees is reviewed "under the deferential abuse of discretion standard." *Sobol*, 74 Va. App. at 288.

Husband argues that the circuit court abused its discretion by ordering him to pay $68,000 in attorney fees and $21,000 in costs. He contends that "the award of attorney[] fees was made in the setting of numerous other rulings made by the trial court that . . . were erroneous." Thus, if this Court reverses any of the circuit court's rulings, then husband asserts that the attorney fee award also should be reversed and remanded for reconsideration. We decline to do so.

Although husband had argued that any attorney fee award should be reasonable, he did not object to the circuit court's award. Accordingly, we find that husband did not preserve his argument for appeal. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Therefore, we will not consider this argument.

### IV. Appellate Attorney Fees and Costs

Wife asks this Court to award her attorney fees and costs incurred on appeal. *See O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). "This Court has discretion to grant or deny attorney's fees incurred on appeal." *Stark*, 73 Va. App. at 757. "[W]e do not find that husband's appeal was 'frivolous or lacked substantial merit,' or that the 'equities of the case' favor an award." *Koons*, 72 Va. App. at 742-43 (quoting Rule 5A:30(b)(3)-(4)). Accordingly, we deny wife's request for attorney fees and costs.

## CONCLUSION

For the reasons discussed above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*