HAWKES, C.J.
 

 In this appeal, we consider a dispute regarding the parties’ property settlement agreement. The Former Wife challenges the trial court’s order denying her motion to enforce the parties’ Consent Final Judgment. The Wife argues the trial court erred by ordering the Former Husband to transfer 100% of the shares in a mutual fund, that had depreciated in value, to her in satisfaction of the Husband’s financial obligations. The Wife argues the terms set forth in the Final Judgment required the Husband to transfer 50% of the shares from the fund, prior to the fund’s depreciation, plus to pay an additional $16,443 in cash. According to the Husband, the lower court acted appropriately because an email exchange between the parties’ attorneys created a novation, altering the terms
 
 *154
 
 of the Final Judgment. Not only does the Husband err in arguing the parties formed a new contract, his failure to comply with the Final Judgment caused financial harm to the Wife. We reverse.
 

 FACTS
 

 The portion of the Final Judgment at issue here required the Husband to pay to the Wife a total of $65,470 in cash and to also transfer 50% of the shares from an Oppenheimer Mutual Fund. The Husband had until August 1, to transfer the assets at issue in this appeal.
 

 Prior to the deadline, the Husband sent the Wife two checks; the first in the amount of $24,700 and the second in the amount of $24,327. After receipt of both checks, the balance owing to the Wife was $16,443. In addition to the outstanding cash obligation, the Husband was still required to transfer 50% of the shares from the Oppenheimer Fund.
 

 On July 31, the Husband sent a letter authorizing his broker to transfer 100% of the shares in the Fund to the Wife. At the time the authorization letter was sent, the trial court found the Oppenheimer Fund had a value of $29,477.84. In offering the Wife 100% of the shares, the Husband was attempting to apply the cash value of the additional 50% of the Fund ($14,738.92), which was not required by the terms of the judgment, toward the outstanding $16,443 he still owed the Wife. If the Husband was credited with the full value of the stock when the letter was sent, there would have only been a balance owed to the Wife of $1,704.08.
 

 According to the Husband, before he sent the authorization letter, he informed his attorney that he did not have enough cash to pay the $16,443 owed to the Wife. Evidently, an exchange of emails occurred between attorneys where the Husband’s attorney specifically asked the Wife’s attorney if his client would accept stock from the Fund toward the outstanding balance. The Wife’s attorney responded that it did not matter how the Wife got her money “as long as she got all of it.” As a result, the Husband’s attorney advised the Husband to transfer all of the shares in the mutual fund to the Wife.
 

 On August 1 the Wife submitted a letter of authorization to the Husband’s broker accepting 50% of the Fund. Since the authorization letters sent by the parties did not match, the broker did not transfer any shares from the Fund to the Wife. No other payments or offers of payment were made by the Husband.
 

 On October 17 the Wife filed a motion requesting, among other things, that the original settlement agreement be enforced. The court denied the Wife’s motion and entered an order finding that:
 

 [Cjlearly the former Wife could have accepted one-half of the value and, in fact, could have accepted 100% of the value of those funds, leaving only a small deficit which could then have been dealt with, rather than through this Motion. The value of the 100% 2788.821 shares of the Oppenheimer funds have declined to $18,015.78 as of the date of the hearing. It is not the fault of the former Husband that they have declined in that fashion.
 

 The court ordered the Husband to transfer all of the shares from the Oppenheimer Fund to the Wife (with credit based on the July 31 value) and pay a balance of $1,704.08, plus interest, from August 1.
 

 The Property Settlement Agreement was Non-modifiable
 

 A property settlement agreement that has been incorporated into a final judgment of dissolution of marriage is non-modifiable, regardless of either party’s fi
 
 *155
 
 nancial position.
 
 See Braswell v. Braswell,
 
 881 So.2d 1193, 1199 (Fla. 3d DCA 2004);
 
 see also Bridges v. Bridges,
 
 848 So.2d 403, 404 (Fla. 2d DCA 2003) (reversing the trial court when, in an attempt to enforce the final judgment of dissolution of marriage, the trial court changed a party’s award of tangible personal property into an award of money damages). The property rights established by a final judgment of dissolution of marriage are fixed as a matter of law unless there is a reservation of jurisdiction.
 
 See Fort v. Fort,
 
 951 So.2d 1020, 1022 (Fla. 1st DCA 2007).
 

 Here, the property settlement agreement was incorporated into the Final Judgment. Because the Final Judgment did not contain a reservation of jurisdiction, the trial court lacked authority to change the terms of contract the parties had agreed to and the court had adopted.
 

 The Parties did not Enter into a New Contract
 

 The Husband agrees the property settlement agreement cannot be modified by the trial court. He attempts to distinguish the present case from the rule by arguing that the email exchanged between the parties’ attorneys formed a novation, or substitute contract. The new agreement or contract, the Husband argues, involved the manner in which he would pay the balance of the Final Judgment. The Husband’s argument ignores the fact that the Wife’s actions in authorizing a 50% fund transfer in compliance with the terms of the Final Judgment serves as compelling evidence that she did not believe the settlement agreement or contract had changed. Even accepting the Husband’s weak starting position, his argument is not — and indeed could not be — supported by the trial judge’s findings for at least two additional reasons.
 

 First, there is no competent, substantial evidence in the record to show the parties intended to form a new contract. Parties form a novation or new contract, only where there is a mutual agreement to substitute an existing valid obligation with a new valid obligation. See
 
 De Las Cuevas v. Nat'l Enterprises, Inc.,
 
 927 So.2d 41, 43 (Fla. 3d DCA 2006). Four factors are necessary to prove the parties intended to create a novation: (1) the existence of a previously valid contract; (2) the agreement of all the parties to a new contract; (3) the extinguishment of the original contractual obligation; and (4) the validity of the new contract.
 
 Id.
 

 Again, even ignoring the Wife’s conduct, the trial judge’s findings fail to show “the agreement of all the parties to a new contract.” In its order denying the motion for enforcement, the court stated:
 

 It was indicated and an e-mail offered in evidence that former Wife’s attorney had stated on or before August 5, 2008, that he did not care how she got her money and there was clearly some
 
 misunderstanding
 
 as to what was communicated between attorneys. (Emphasis added).
 

 As
 
 De Las Cuevas
 
 clearly states, a novation requires that a party show there is agreement to form a new contract. Here, the judge found a misunderstanding. A misunderstanding cannot result in agreement or to a “meeting of the minds” required to form a contract. The Husband simply failed to establish that both parties intended to alter the terms of the settlement agreement and create a new agreement.
 

 Second, the email — taken in the light most favorable to the Husband — consisted of the Wife demanding to be paid the amount owed. Due to transaction costs, the Fund’s cash value would not equal its market value on any given day. If the
 
 *156
 
 Wife had agreed to accept the remaining 50% of the Fund, instead of cash, she would have incurred the transaction cost in converting the Fund to cash. This point is illustrated by the Husband’s effort to transfer, instead of liquidate, the Fund. Nothing prevented the Husband from instructing his broker to transfer the 50% he was obligated to transfer to the Wife, to liquidate the remaining 50% of the Fund and to tender the proceeds to the Wife. If the Husband had proceeded in this manner, he would have succeeded in dispensing with 100% of the Fund and also satisfied his obligations under the Final Judgment. Instead, he hoped to transfer the entire fund, shifting the transaction costs to the Wife. This would not result in the Wife getting “all of it.”
 

 Husband’s Responsibility to Timely Transfer Assets
 

 The law is clear: where a final judgment of dissolution of marriage provides for the transfer of assets, it is the responsibility of the spouse in possession of those assets to effectuate the transfer.
 
 See Demoraes v. Demoraes,
 
 714 So.2d 1150, 1151 (Fla. 2d DCA 1998). Similar to the present case, the trial court in
 
 Demo-raes
 
 denied the wife’s motion to enforce a property settlement agreement incorporated in a final judgment.
 
 Id.
 
 The Second District reversed, holding that the husband should have transferred the apartment to his former wife in accordance with the property settlement agreement, despite the trial court’s findings that the wife did nothing to assist in the transfer.
 
 Id.
 
 The court stated that “the wife had
 
 no duty
 
 at all concerning the transfer; under the final judgment, it was the husband’s obligation to convey the apartment to her. What the wife did or did not do is irrelevant.”
 
 Id.
 
 at 1151 (emphasis added). With the responsibility to transfer the asset must also come the risk of loss if the asset is not timely transferred.
 

 The Husband argues that this case is distinguishable, because, unlike
 
 Demo-raes,
 
 he claims he actually tried to transfer the assets at issue. This argument also fails for at least two reasons. First, the authorization letter sent by the Husband, unlike the one sent by the Wife, did not comply with the terms of the Final Judgment. Second, the Husband made no further effort to assure the Fund assets were transferred. Clearly, to avoid responsibility, an individual must be able to demonstrate that the failure of the transfer to occur was due to factors beyond their control. In essence, the Husband would be able to show, that in spite of his efforts, it was impossible to transfer the assets. Certainly, that is not the case here.
 

 CONCLUSION
 

 The trial court found the shares had a market value of $29,477.84 at the time they were required to be transferred to the Wife. If transferred timely the Wife would have received shares worth a total of $14,738.92 less transaction costs. Therefore, on remand, the trial court should award economic damages the Wife suffered as a result of the Husband’s failure to comply with the Final Judgment. The Court should also award the Wife the remaining $16,443 due to her under the Final Judgment. Both awards should include interest at the statutory rate from the day the Final Judgment required the transfer.
 

 REVERSED and REMANDED.
 

 WOLF, J., concurs and DAVIS, J., concur in result only.