YILLANTI, Judge.
 

 Fred Buoniconti appeals several aspects of the final judgment of dissolution of his marriage to Ivy Buoniconti. We affirm the decision to award permanent alimony payable as a lump sum and the decision to award retroactive alimony, but we reverse the amounts of these awards because they are not supported by the record. We also reverse the equitable distribution award and remand for further proceedings because the trial court improperly determined that the Husband had dissipated marital assets. We affirm all other aspects of the final judgment without discussion.
 

 Background Facts
 

 The Husband and Wife had been married for over thirty-eight years when the Wife filed her petition for dissolution of marriage in November 2007. During the
 
 *157
 
 majority of the parties’ marriage, the Husband owned and operated a successful heating and air conditioning contracting business in Massachusetts. The Wife primarily raised the parties’ children, although she did provide some part-time office assistance to the Husband after the children reached school age.
 

 During the marriage, the parties acquired several pieces of real property. In Massachusetts, the parties owned a residence located at 70 Munger Road in Chico-pee, which was the Massachusetts marital home; a duplex located at 75 Munger Road, which was leased to tenants; and a commercial property located on Doty Circle in Chicopee, which housed the parties’ contracting business. In Florida, the parties owned a residence on Clubview Circle in Venice, which was the former marital home. They also owned a residence on Tuscany Boulevard in Venice, which was the current Florida marital home. Finally, they owned a half-interest in a residence known as the “Hibiscus residence,” which the Husband had purchased with a partner to remodel and “flip.” None of these properties were encumbered by mortgages, and the parties were receiving $1300 per month in rental income from the 75 Munger Road duplex and $4000 per month in rental income from the Doty Circle commercial property.
 

 In 2001, the parties sold their contracting business in Massachusetts and retired to Florida; however, they continued to spend most of the summer in Chicopee. The Husband soon grew bored with retirement, and he and a partner began purchasing properties in Venice, remodeling them, and reselling them. Then, in 2004, the Husband was approached by a friend who asked if he would be interested in being a construction consultant for a chain of grocery stores in the northeast. The Husband described this as his “dream job,” and he returned to work as a construction consultant in Massachusetts and Connecticut.
 

 The evidence presented at the dissolution hearing showed that the Husband earned approximately $10,000 per month in his consultant position. He deposited this income into a Bank of America account in Massachusetts, which was in the name of Fred Buoniconti, Inc. The parties also had a joint account at Regions Bank in Florida. When the Wife filed her petition for dissolution, the Husband’s Bank of America corporate account held approximately $42,000 while the parties’ joint account at Regions Bank held approximately $60,000. In addition, the parties had numerous retirement and investment accounts, each containing substantial sums.
 

 Before the Wife filed her dissolution petition, the Husband and Wife lived primarily in the Tuscany Boulevard home and spent their summers in the 70 Munger Road home. The Clubview Circle residence was vacant and for sale, as was the Hibiscus residence. After the Wife filed her petition for dissolution, the Husband moved out of the Tuscany Boulevard home and moved into the Clubview Circle residence with his paramour. He also moved out of the 70 Munger Road home and rented an apartment nearby. While the Husband was doing consulting work in Massachusetts, he stayed in the apartment, but he and his paramour lived permanently in the Clubview Circle residence. The Husband traveled frequently between Massachusetts and Florida so that he could see his paramour, and he paid for his paramour to fly to see him in Massachusetts on several occasions.
 

 Between November 2007 and June 2008, the Wife received the $5300 per month rental income from the parties’ real properties and used that income to support
 
 *158
 
 herself. The Husband supported himself with the $10,000 per month income from his consulting position. Then, following a dispute between the parties in June 2008, the Husband unilaterally redirected the $4000 per month rental income from the Doty Circle commercial property from the Wife to himself. He subsequently sold the Doty Circle commercial property without notice to the Wife and received gross proceeds from the sale in excess of $550,000. At the time of the dissolution hearing, the net proceeds remained in an account titled solely in the Husband’s name.
 

 After the Husband withdrew the rental income from the Doty Circle commercial property from the Wife in June 2008, she withdrew approximately $22,000 from the parties’ joint bank account, placed it in an account in her name, and used the funds to supplement her income and pay her living expenses during the remainder of the dissolution proceedings. She also used approximately $10,000 from the parties’ Smith Barney investment account for the same reasons.
 

 In October 2008, the Husband’s consulting position was terminated due to slowdowns in the construction industry. The Husband had been aware as early as August 2008 that his position would be ending, but he took no steps to seek alternative employment. As of the date of the dissolution hearing in March 2009, the Husband was unemployed and living with his paramour in Florida. He testified that he had tried to find work in Florida but that his efforts were hampered by his lack of a Florida contractor’s license. He also testified that he had sent numerous ré-sumés to Fortune 500 companies nationwide, but he admitted that he would not move if he received a job offer from outside the Venice area.
 

 Prior to the dissolution hearing, the parties resolved the majority of the issues between them. The trial court was asked to consider only the Wife’s claims for permanent and retroactive alimony and her claim that the liquid marital assets should be distributed unequally due to the Husband’s dissipation of certain marital assets during the marriage. At the close of the dissolution hearing, the trial court awarded the Wife permanent alimony payable as a lump sum as well as retroactive alimony. It also found that the Husband had dissipated marital assets, and it charged those dissipated assets to the Husband in its equitable distribution scheme. The Husband now appeals these awards, contending that they constituted an abuse of the trial court’s discretion because they were not based on competent, substantial evidence presented at the hearing.
 

 Lump Sum Alimony
 

 The Husband first contends that the trial court abused its discretion by awarding the Wife $261,240 in permanent alimony payable as a lump sum. This argument has two components: first, whether the Wife was entitled to permanent alimony payable as a lump sum rather than permanent periodic alimony; and second, whether the amount of alimony awarded was supported by the evidence. We affirm the Wife’s entitlement to permanent alimony payable as a lump sum, but we reverse the amount awarded and remand for further proceedings.
 

 Entitlement
 

 The seminal case regarding permanent alimony payable as a lump sum is
 
 Yandell v. Yandell,
 
 39 So.2d 554 (Fla.1949). In that ease, the supreme court recognized that permanent alimony could be awarded “either in gross or by periodical payments.”
 
 Id.
 
 at 556 (quoting 27 C.J.S.
 
 Divorce
 
 § 235 (1949)). However, the court also noted that “the better practice is to direct periodic payments of permanent alimony and a lump award should
 
 *159
 
 be made only in those instances where some special equities might require it or make it advisable.”
 
 Id.
 
 Moreover, a lump sum award of permanent alimony “should never be made unless the husband is in a financial position to make payment of such gross award without endangering or actually impairing his economic status.”
 
 Id.
 

 Since
 
 Yandell,
 
 courts have generally held that permanent alimony payable as a lump sum is appropriate only when there are special circumstances between the parties that make such an award advisable.
 
 See, e.g., Canakaris v. Canakaris,
 
 382 So.2d 1197, 1201 (Fla.1980);
 
 Riscile v. Riscile,
 
 370 So.2d 819, 821 (Fla. 2d DCA 1979);
 
 Hannon v. Hannon,
 
 740 So.2d 1181, 1186 (Fla. 4th DCA 1999);
 
 Glazner v. Glazner,
 
 693 So.2d 650, 652 (Fla. 5th DCA 1997). However, the question of whether permanent alimony payable as a lump sum is appropriate in any given case falls within the broad discretion of the trial judge.
 
 See Canakaris,
 
 382 So.2d at 1202. This discretion will not be disturbed on appeal unless “ ‘no reasonable man would take the view adopted by the trial court.’ ”
 
 Id.
 
 at 1203 (quoting
 
 Delno v. Market St. Ry. Co.,
 
 124 F.2d 965, 967 (9th Cir.1942)).
 

 Here, the parties agree that the Wife is entitled to some form of permanent alimony based on the length of the marriage and the parties’ decision that the Wife would not work full-time during the marriage. In deciding to award permanent alimony payable as a lump sum, the trial court found that the Husband had a “history of some unfair unilateral financial decisions, waste, and what appears to be a current reluctance to work.” Contrary to the Husband’s arguments, these findings are supported by the record.
 

 There is no dispute that while the Husband was working and earning approximately $10,000 per month, he unilaterally and unjustifiably redirected the rental income from the Doty Circle commercial property to himself, thus depriving the Wife of the majority of the income she had used to support herself during the dissolution proceedings. Prior to this decision, the Wife had approximately $5300 per month with which to support herself while the Husband had approximately $10,000 per month. After this decision, the Wife’s monthly income was reduced to $1300 while the Husband’s was increased to approximately $14,000. This unilateral financial decision by the Husband was not only wholly unnecessary but it also forced the Wife to invade the parties’ retirement funds in order to support herself. The Husband also sold the Doty Circle commercial property without the Wife’s knowledge or consent. This evidence supports the trial court’s finding of unfair unilateral financial decisions by the Husband.
 

 The evidence also showed that the Husband frequently flew back and forth from his job in Massachusetts to Florida so that he could see his paramour, and he also flew his paramour to Massachusetts to see him on several occasions. While the amounts expended for these flights may not have been great, this evidence supports the trial court’s finding of waste.
 

 Finally, the evidence supported the trial court’s finding that the Husband had a “current reluctance to work.” While the Husband presented evidence that the parties intended to retire when they sold the contracting business and that he went back to work only because his “dream job” landed in his lap, there was also evidence that the Husband quickly grew bored with retirement and had, in actuality, been working ever since he “retired.” In light of this evidence, it was within the trial court’s purview to find that the Husband was currently “retired” solely for purposes of the dissolution hearing.
 

 
 *160
 
 Based on these facts, it was not unreasonable for the trial court to suspect that the Husband might find ways to avoid the payment of any permanent periodic alimony it would award. Indeed, the Husband relied on his current unemployment to argue that his Wife of thirty-eight years was not entitled to any permanent alimony, or at best a nominal sum, because he had no ability to pay. However, the Husband had substantial liquid assets from which he could easily pay an award of permanent alimony as a lump sum. The availability of these liquid assets coupled with the Husband’s lack of current income constitute exactly the type of “special circumstances” necessary to support the trial court’s discretionary decision to award permanent alimony payable as a lump sum.
 
 See Sanders v. Sanders,
 
 435 So.2d 372, 373 (Fla. 5th DCA 1983) (affirming an award of permanent alimony payable as a lump sum due to the availability of assets but a limited income stream and noting that “[i]f the husband had more earnings, an award of permanent periodic alimony would be appropriate”). On the record before us, we will not disturb this exercise of the trial court’s discretion.
 

 At oral argument, counsel for the Husband argued that it was “unfair” to award permanent alimony as a lump sum because the Wife would get to keep the entire award even if she chooses to remarry or cohabit.
 
 See Canakaris,
 
 382 So.2d at 1201 (noting that permanent alimony payable as a lump sum constitutes a vested right that is neither modifiable nor terminable upon the receiving spouse’s death or remarriage). We reject this “unfairness” argument for three reasons.
 

 First, there was no evidence that the Wife sought permanent alimony payable as a lump sum because she was planning to remarry or cohabit. Instead, the only evidence of cohabitation was the Husband’s cohabitation with his paramour. Second, there is nothing “unfair” about a court of equity exercising its discretion to select from the range of available options, provided that the option chosen is supported by the evidence and can withstand the applicable standard of review. Third, the Husband cannot be heard to complain simply because his chosen financial strategy did not produce the desired result. The Husband’s course of conduct forced the trial court to choose between awarding the Wife nominal permanent periodic alimony or a reasonable amount of permanent alimony payable as a lump sum. The trial court chose to award permanent alimony payable as a lump sum. The fact that the Husband’s apparent strategy to avoid paying permanent alimony backfired is the risk he took when he chose that course of action. Absent legal error, a party’s failed strategy is not rectifiable on appeal.
 

 Amount of Alimony
 

 The amount of permanent alimony awarded, however, presents a different issue and requires reversal for reconsideration. The permanent alimony awarded by the trial court was calculated based on the Wife’s monthly need of $4354 multiplied by sixty months, which was the time remaining between the dissolution hearing and the Wife’s sixty-fifth birthday when she will be eligible to collect Social Security benefits. This total was $261,240.
 

 However, in calculating the Wife’s monthly need, the trial court failed to consider the interest income that will be available to her from the liquid assets she is receiving as part of the equitable distribution. In
 
 Sharon v. Sharon,
 
 862 So.2d 789 (Fla. 2d DCA 2003), this court held that a trial court is required to consider such income when determining the proper amount of permanent alimony if the parties present evidence of such income.
 

 
 *161
 
 A court is required to impute income for earnings that can reasonably be projected based on liquid assets awarded as part of the property division.
 
 Greenberg v. Greenberg,
 
 793 So.2d 52, 55 (Fla. 4th DCA 2001). Although they disagreed about the amount of the appropriate rate of return, both parties presented evidence concerning the income the Wife could reasonably expect to receive from her liquid assets. The final judgment does not reflect that the trial court took the Wife’s anticipated income from her liquid assets into account in determining the amount of permanent alimony the Husband was ordered to pay. On remand, the trial court should make findings concerning the amount of income the Wife can reasonably expect to receive on her liquid assets and take the Wife’s projected income into account in its redetermination of an appropriate award of permanent alimony.
 

 Id.
 
 at 792.
 

 Here, the Husband presented evidence that the Wife would be expected to earn 2 to 2⅜ percent each month on the approximately $500,000 in liquid assets that she would be receiving as part of the equitable distribution. This would give the Wife approximately $800 to $1000 per month in interest income. However, the final judgment does not mention this income, and it is not deducted from the amount established as the Wife’s monthly need. Because it is an abuse of discretion to award an amount of alimony that exceeds a spouse’s need,
 
 see Garcia v. Garcia,
 
 25 So.3d 687, 690 (Fla. 4th DCA 2010), we must reverse and remand for a rede-termination of the amount of the Wife’s need for alimony in light of this unaccounted-for income.
 

 In addition, since we are remanding for a redetermination of the amount of permanent alimony to which the Wife is entitled, we note that because the award was intended to function as a “prepayment” of the next five years’ worth of the Wife’s need, the trial court should have reduced the amount to present value, as argued by the Husband at the hearing and as the Wife’s accountant testified at the hearing. Although the trial court fully accepted the Wife’s accountant’s testimony, it did not reduce the lump sum award to present value in the final judgment. On remand, the trial court should address this present-value calculation as well.
 

 Retroactive Alimony
 

 The Husband also argues that the trial court abused its discretion by awarding the Wife retroactive alimony. As with the permanent alimony award, we affirm the trial court’s finding that the Wife was entitled to such an award, but we remand for reconsideration of the amount awarded.
 

 An award of retroactive alimony, like any other award of alimony, must be based on the receiving spouse’s need for alimony and the paying spouse’s ability to pay.
 
 See Alpert v. Alpert,
 
 886 So.2d 999, 1002 (Fla. 2d DCA 2004);
 
 Schellhammer v. Schellhammer,
 
 687 So.2d 987, 989 (Fla. 5th DCA 1997);
 
 Hodge v. Hodge,
 
 607 So.2d 510, 511 (Fla. 5th DCA 1992). When one spouse has sufficient income to pay alimony during the pendency of dissolution proceedings but instead decides to provide only nominal support, thus requiring the other spouse to invade marital assets for support, an award of retroactive alimony may be proper.
 
 See Alpert,
 
 886 So.2d at 1002.
 

 Here, the evidence showed that the Wife was fully able to support herself with the $5300 in rental income from the Doty Circle commercial property and the 75 Mun-ger Road residence from the date of filing in November 2007 until June 2008. At that point, however, the Husband unilater
 
 *162
 
 ally decided to keep the $4000 per month rental income from the Doty Circle commercial property, thus leaving the Wife with only $1300 per month in income. The Husband provided no support to the Wife from his now $14,000 per month income. Instead, as a practical matter, he required the Wife to support herself by supplementing her $1300 per month income with funds withdrawn from the parties’ joint bank accounts. On these facts, the trial court’s decision to award the Wife retroactive alimony is fully supported by the evidence presented at the hearing.
 

 However, as with the amount of permanent alimony, the amount of retroactive alimony awarded is not supported by the evidence because it does not account for the Wife’s use of the Husband’s share of certain marital assets to support herself. The record shows that at the time of filing in November 2007, the Wife “controlled” a bank account at Regions Bank that contained $60,000. There is apparently no dispute that this was a joint account containing marital funds. After the Husband redirected the $4000 per month in rental income from the Doty Circle commercial property to himself, the Wife transferred at least $22,000 of the funds in the Regions Bank account into an account in her sole name, and she used those funds to support herself. She apparently also used another $10,000 that the parties had withdrawn from their joint Smith Barney account. The final judgment on its face does not account for the Wife’s use of the Husband’s one-half share of these marital funds.
 

 In
 
 Welch v. Douglas-Welch,
 
 800 So.2d 630, 630 (Fla. 2d DCA 2001), this court addressed a similar situation, stating:
 

 Benjamin Welch appeals the final judgment of dissolution of his marriage to Anna Welch. He raises several issues in this appeal, but we find merit only in his argument regarding the trial court’s disposition of the parties’ joint savings account.
 

 In the order granting Anna’s motion for temporary alimony, the trial court found that at the time of separation, Anna removed the $32,000 in the parties’ joint savings account and placed that amount in a separate account. The court further found that, as of the date of the hearing on Anna’s motion for temporary alimony, Anna had used all but $9000 of the parties’ joint savings. The trial court’s only reference to the parties’ joint savings account in the final judgment of dissolution is the incorporation of these findings from the order granting temporary alimony into that judgment and a finding that all bank accounts had already been divided between the parties.
 

 Benjamin contends that he has not been given credit for Anna’s use of his share of the parties’ joint savings account. He requests that his obligation to pay Anna retroactive temporary alimony be offset by Anna’s use of his share of the parties’ savings.
 

 The final judgment of dissolution is not clear with regard to the disposition of the parties’ joint savings account.
 
 See
 
 § 61.075(3), Fla. Stat. (2000). Accordingly, we remand the judgment for findings regarding the disposition of this marital asset, as well as consideration of whether the record supports any type of credit to Benjamin for Anna’s use of his share of the parties’ joint savings account.
 

 In this case, as in
 
 Welch,
 
 the final judgment does not address whether the Husband should be entitled to credit against the award of retroactive alimony for the Wife’s use of the Husband’s “share” of the Regions Bank account or the Husband’s “share” of the Smith Barney funds during
 
 *163
 
 the dissolution proceedings. Accordingly, as in
 
 Welch,
 
 we reverse the amount of retroactive alimony awarded and remand for the trial court to determine whether any such credit is warranted in this case.
 

 Dissipation of Marital Assets
 

 Finally, the Husband contends that the trial court abused its discretion by unequally dividing the parties’ liquid marital assets based on a finding that he had dissipated marital assets. On this point, we agree.
 

 This court has explained that the dissipation of marital assets occurs when “ ‘one spouse use[d] marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.’ ”
 
 Roth v. Roth,
 
 973 So.2d 580, 585 (Fla. 2d DCA 2008) (alteration in original) (quoting
 
 Romano v. Romano,
 
 632 So.2d 207, 210 (Fla. 4th DCA 1994)). To include a dissipated asset in the equitable distribution scheme, “there must be evidence of the spending spouse’s intentional dissipation or destruction of the asset.”
 
 Id.
 
 Simple mismanagement or squandering of an asset in a manner of which the other spouse disapproves does not constitute dissipation.
 
 Id.
 
 Neither does an imprudent or unwise investment decision.
 
 See Squindo v. Osuna-Squindo,
 
 943 So.2d 232, 236 (Fla. 3d DCA 2006);
 
 Gentile v. Gentile,
 
 565 So.2d 820, 823 (Fla. 4th DCA 1990),
 
 disapproved on other grounds, Acker v. Acker,
 
 904 So.2d 384 (Fla.2005).
 

 Here, the trial court found that the Husband had dissipated assets by flying back and forth from Massachusetts to Florida to see his paramour while he was working in Massachusetts. The trial court also found that the Husband’s decision to loan funds to his paramour constituted dissipation. Finally, the trial court found that the Husband’s decision to allow his paramour to live in the Clubview Circle residence rent-free constituted a dissipation of assets because the parties could have otherwise rented that residence to obtain additional income. We agree with the trial court that the Husband’s decision to expend marital funds solely for the purpose of providing airfare to and from Massachusetts for himself and his paramour might be considered dissipation of marital assets. The evidence shows that these expenditures totaled $739, and the trial court could properly account for this sum as a “dissipated asset.” However, the other two components of the trial court’s dissipation award do not constitute dissipation as defined.
 

 Concerning the loan to the Husband’s paramour, the Husband’s act of lending his paramour $987 would usually be considered dissipation.
 
 See, e.g., Matti v. Matti,
 
 647 So.2d 168, 170 (Fla. 2d DCA 1994) (holding that transfer of marital assets to the wife’s paramour constituted dissipation). However, the undisputed evidence in this case is that the Husband’s paramour had repaid these funds prior to the dissolution hearing. Since the funds were repaid, they were no longer “dissipated” funds that should be redistributed. Instead, those funds would have been present in a bank account or other investment account and thus were presumably accounted for when the parties divided those assets. Allowing the court to distribute them once when dividing the parties’ liquid assets and then again in the dissipation calculation was an improper double counting of these funds.
 

 Finally, the Husband’s decision not to charge his paramour rent for the Clubview Circle residence cannot properly be considered dissipation. No one disputes that the Clubview Circle residence had been standing vacant and for sale for two years before the Wife petitioned for dissolution. At that point, she required the Husband to
 
 *164
 
 move out of the marital home on Tuscany Boulevard. He then moved himself and his paramour into the Clubview Circle residence.
 

 Since the Clubview Circle residence had never been rented, the Husband’s decision to move into it with his paramour did not deprive the Wife of income she would have otherwise received. Further, there is no evidence that the Husband’s occupancy of the residence resulted in any destruction of the residence. The Husband’s decision to live in an otherwise vacant residence rather than renting it out does not constitute dissipation of the asset. At most, it constituted a decision not to increase marital income, which might be construed as an imprudent investment decision — not dissipation. In fact, the Husband’s decision seems prudent given the alternative of leaving the Clubview Circle residence vacant and renting yet another residence in Venice. On the whole, the Husband’s zero-sum option did not constitute a dissipation of assets.
 

 Since there was no dissipation of assets from the Husband’s loan to his paramour nor his decision to live in the Clubview Circle residence, charging the Husband with these amounts as dissipated assets was an improper application of the law. Therefore, we reverse the equitable distribution award to the extent that it improperly charges the Husband with these amounts, and we remand for recalculation of this award.
 

 Conclusion
 

 In sum, we affirm the trial court’s finding that the Wife was entitled to awards of permanent alimony payable as a lump sum and retroactive alimony. However, we reverse the amounts of these awards and remand for reconsideration in light of this opinion. We also reverse the equitable distribution award and remand for recalculation in light of our holding concerning the dissipated assets. In all other respects, we affirm.
 

 Affirmed in part, reversed in part, and remanded for further proceedings.
 

 WALLACE and CRENSHAW, JJ., Concur.