DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JANE ALLEN,**
Appellant,

v.

**ESTATE OF JAY E. ALLEN,**
Appellee.

No. 4D19-2195

[April 22, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Charles M. Greene, Judge; L.T. Case No. PRC-15-005542.

Amanda B. Haberman and Liliana Loebl of Kaplan Loebl, LLC, Aventura, for appellant.

David M. McDonald of McDonald & McDonald, Miami, for appellee.

FORST, J.

This case involves a dispute regarding the terms of a Marital Settlement Agreement ("MSA"), incorporated into a final judgment of dissolution. The MSA included an equalizer payment provision transferring funds from Jay Allen to his ex-wife, Jane Allen. Soon after the entry of the final judgment, Jay passed away. A dispute arose between Jay's estate ("the Estate") and Jane with respect to the MSA's contingency arrangement for the equalizer payment. The trial court resolved the dispute to the satisfaction of the Estate. We conclude that the trial court erred in its construction of the MSA. Thus, we reverse.

**Background**

Jane and Jay entered into the MSA in October 2015 and finalized their divorce a few weeks later. The parties' current dispute arises out of differing interpretations of the MSA. The three pertinent provisions are as follows:

ARTICLE IV: WAIVER OF ALIMONY: Both parties do freely, knowingly and irrevocably waive and renounce any and all rights they may have to alimony of all types, including but not limited to temporary, permanent, rehabilitative, lump-sum, bridge-the-gap, and transitional alimony. The Husband and Wife mutually acknowledge that they have been fully advised concerning their rights in this regard and that each is aware of the earning ability and financial resources of the other. This provision cannot be modified under any circumstance whatsoever.

* * *

ARTICLE VI: EQUITABLE DISTRIBUTION: as equitable distribution of the marital assets, and not for support, the parties agree as follows.

* * *

I. As and for an equalizer payment, commencing November 1, 2015 and every 1st of the month thereafter, the Husband shall pay to the Wife the sum of $5,000.00 for 120 months and his equalizer payments shall automatically terminate after the 120th payment. This monthly sum takes into consideration any alimony the Husband may have owed the Wife, and the sums owed to the Wife under equitable distribution. . . .

* * *

ARTICLE VIII: LIFE INSURANCE: Within 90 days of the date of this agreement, the Husband shall obtain a 10 year term life insurance policy with a death benefit of $400,000.00 naming the Wife as beneficiary. Each year the Husband shall be entitled to reduce the death benefit amount that shall be designated to the Wife in relation to the amount due and owing to the Wife on the equalizer payment. . . . The parties acknowledge that the death benefit of the life insurance does not cover the total amount owed to the Wife under this Agreement. In the event that the death benefit does not cover what is owed to the Wife under this Agreement, she shall be

2

permitted to recover from the Husband's estate in the event of his untimely demise.

Several years after Jay's death, Jane filed a "Statement of Claim" against the Estate, seeking $200,000 to supplement the lump sum payment of $400,000 under the insurance policy. The Estate paid her $140,000, informing Jane that, because she received the $400,000 "up front, rather than over a period of eighty (80) months, the time value of money should be considered." The Estate reasoned:

> At the end of 80 months, [using the Estate's accountant's calculations,] $400,000 . . . would have grown to $457,205.20. The Estate has made monthly payments totaling $140,000 to date (November 2015 — February 2018). As such, the remaining amount due to Jane Allen is $2,794.80.

Thus, as of February 2018, Jane had received $540,000 from the Estate. She filed a Verified Motion to Enforce Settlement Agreement, seeking the remaining $60,000 of the $600,000 "equalizer payment" provided in the MSA.

Following a hearing on Jane's motion, the trial court accepted the Estate's arguments and ruled that the "equalizer payment" was a "periodic payment" and, "because of the demise of the decedent, that payment was escalated and the wife has received a windfall. And the wife has to recognize that she is only entitled to the present value, and that's what [*Buoniconti v. Buoniconti*, 36 So. 3d 154 (Fla. 2d DCA 2010)] says and that is what is required by law." Reasoning that the MSA provided for "a lump sum of $5,000 a month for 120 months," the trial court concluded "[w]hen [Jane] receive[s] the money in advance, it's subject to present money or present-value deduction . . . ." The trial court thus ordered the reduction of the balance owed to Jane based on the present value of the insurance policy compared to the value of receiving $5,000 per month for 80 months.

## Analysis

The interpretation of the wording and meaning of a marital settlement agreement, as incorporated into the final judgment, is subject to de novo review. *Kirschner v. Kirschner*, 244 So. 3d 1105, 1111 (Fla. 4th DCA 2018). "A marital settlement is interpreted like any other contract." *Id.* (citing *Feliciano v. Munoz–Feliciano*, 190 So. 3d 232, 234 (Fla. 4th DCA 2016)).

Jane argues that the financial obligation of 120 monthly payments of $5,000 was not alimony; the payments were part of the equitable

3

distribution of marital assets. The Estate counters that these payments were a combination of both alimony and equalizer payments. The MSA expressly states, however that "[b]oth parties do freely, knowingly and irrevocably waive and renounce any and all rights they may have to alimony of all types" and that the 120 payments were "equitable distribution of the marital assets, and not for support." Thus, the *Buoniconti* opinion, relied upon by the trial court, is not controlling with respect to the situation in this case since *Buoniconti* dealt with periodic payments of permanent *alimony*. *Buoniconti*, 36 So. 3d at 160. Moreover, the Estate's argument in its answer brief that the "equalizer payment is a hybrid payment" containing both support and equitable distribution elements" is not supportable, as Article IV clearly demonstrates that the parties waived and renounced any right to temporary or permanent support.

Unlike alimony, "a property settlement agreement that has been incorporated into a final judgment of dissolution of marriage is non-modifiable, regardless of either party's financial position. The property rights established by a final judgment of dissolution of marriage are fixed as a matter of law unless there is a reservation of jurisdiction." *Seawell v. Hargarten*, 28 So. 3d 152, 154-55 (Fla. 1st DCA 2010) (internal citations omitted). There is no "reservation of jurisdiction" applicable to the equalizer provision in either the MSA or elsewhere in the final judgment of dissolution. In fact, the parties agreed that the waiver of alimony provision "cannot be modified under any circumstances whatsoever."

To fulfill his equitable distribution obligations, the former husband agreed to secure life insurance (which he did) and "in the event that the death benefit does not cover what is owed to the Wife under this Agreement, she shall be permitted to recover from the Husband's estate in the event of his untimely demise." "In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract. The actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Fla. Inv. Grp. 100, LLC v. Lafont*, 271 So. 3d 1, 4 (Fla. 4th DCA 2019) (internal citations and alteration omitted).

"[S]ince property rights in a dissolution of marriage action are absolutely fixed and vested at the time of entry of the final judgment of dissolution, the trial court cannot thereafter modify those rights." *Mandy v. Williams*, 492 So. 2d 759, 760 (Fla. 4th DCA 1986). Here, the equitable distribution of $600,000 vested with Jane on the day that the final judgment of dissolution was entered. Jane was owed nearly the entire $600,000 equitable distribution at the time of Jay's death. The life

4

insurance policy's "death benefit" paid her $400,000. The Estate has paid her an additional $140,000. The MSA's "Life Insurance" clause provides that "[i]n the event that the death benefit does not cover what is owed to [Jane] under this Agreement, she shall be permitted to recover from the Husband's estate in the event of his untimely demise." Thus, the amount that Jane "shall be permitted to recover" after receipt of the $400,000 is the portion of the $600,000 that she had not yet received. This is so because there is no provision in the MSA permitting the Estate to reduce the payment stream to present value.

## Conclusion

We reverse the orders appealed and remand for the trial court to enter an order requiring the Estate to pay Jane the difference between the amount that she has received to date from the insurance policy and the Estate, and the amount ($600,000.00) designated as equitable distribution.

*Reversed.*

WARNER, J. and WALSH, LISA S., Associate Judge, concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***